## Blair's Appeal

*Charles S. Schermer*, for appellant.

*Leo Weinrott*, for protestants.

*Edmund P. Hannum*, for Pennsylvania Liquor Control Board.

CARROLL, J., November 13, 1946.—This is an appeal from the order of the Pennsylvania Liquor Control Board dismissing an application for the transfer of a retail liquor license to premises at the Northeast Corner of Watts and Manning Streets in the City of Philadelphia. The opinion and order of the Liquor Control Board were entered on May 10, 1946. In the opinion it is noted that this application was the third one made for this same transfer. The only reason given for the refusal in the case before us is ". . . that the protests, which on two occasions have been sustained, should again be upheld. . . ."

At the hearing before us, de novo, as provided by the act of assembly, it was agreed that the record of the proceedings before the board contained all the evidence and it was therefore submitted to us on this record. The only question before us is whether the board's action in refusing to grant the transfer was a sound and proper exercise of its discretion.

Counsel for appellant contends that since the applicant has been found by the board to be of good repute and that the premises meet the physical requirements, the applicant's right to a transfer is absolute under the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended by the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, and the

Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762. Counsel concedes, however, that while it is not mandatory under the provisions of these acts of the legislature that we grant this transfer, we are obliged to review the action of the Liquor Control Board in the exercise of its discretion which resulted in its refusal to grant the transfer.

For the proper disposition of the matter before us it is obvious that we are required to review the action of the Liquor Control Board, but as was held by our President Judge Gordon in In re Transfer of Liquor License, 46 D. & C. 93 (1943), we feel that ". . . It is neither necessary nor desirable to attempt to define with any degree of precision the extent of the board's discretion or of ours, as a final appellate tribunal acting de novo, in the granting of licenses and transfers under the Act. . . ." Our view is that in the determination of the matter before us we are not called upon to fix the limit of our powers, but first of all to determine whether the board had any discretionary power to refuse the transfer after it has made a determination that applicant is of good repute, which it has done in this case. We also take the view that it is sound administration of the law to sustain the action of any board which, having the power to administer with discretion, has exercised that discretion properly. Believing this to be so, even on appeal de novo as here, where we have the power under the act to grant the transfer of a license, it is our inclination not to overrule the action of the board unless there appears to be a clear abuse of discretion. However, we would consider it to be such abuse of discretion if in the exercise thereof, discrimination had resulted.

The opinion of the board, and the arguments of counsel, make reference to the facts that two previous applications for this transfer have been refused and in each instance the courts have sustained the action of the board.

The first refusal of the board to grant the transfer in May of 1944 was sustained by President Judge Smith because the objection to the transfer was ". . . based upon the consideration that this immediate neighborhood had ample places where liquor was sold and that there are a number of protests against such transfer . . ." and because the Court felt ". . . that the Board, in calling a halt to any additional liquor licenses in that neighborhood, acted wisely. . . ." It is obvious that, based on such reasons, the determination of the court to dismiss the appeal and refuse the transfer was sound and if the factual situation before us were identical we would do likewise. But the situation before us differs greatly as will hereinafter appear.

The second refusal in December of 1944 was sustained by Judge Milner because of objections by the police department and for the added reason that there are ". . . maintained sufficient licensed establishments in the vicinity to accommodate the needs of such persons residing in the neighborhood as well as transients who might have occasion to come to the section of the city where the restaurant is to be located and because the premises proposed to be licensed are not in operation as a bona fide restaurant as provided by law. . . ."

Here again are sound reasons, but with the exception of the several protests which will be discussed hereinafter, none of these reasons is present before us. In fact, the Police Bureau of the City of Philadelphia on the record of this case and before us at bar has withdrawn its protest to this transfer as it has withdrawn its general protest to all transfers in that neighborhood, many of which, since 1944, were granted by the Pennsylvania Liquor Control Board before the general protest was withdrawn.

We would add that we are in accord with the observations made by Judge Milner in his opinion sur the

second appeal that even if it appears that the Liquor Control Board has made too many transfers, this is no basis for granting an additional transfer and ". . . failing to uphold the hands of the Liquor Board in attempting now to keep the situation existing in that district because of the multiplicity of licenses from being aggravated. . . ."

Our determination, therefore, of the matter is limited to that which appears on the record before us and the opinion of the liquor board on that record. The record contains nothing except the protests of several individuals and the withdrawal of the protest of the bureau of police. A careful examination of the testimony of each protestant clearly evidences the fact that the objection is not to the transfer of a liquor license but is an objection to a present condition of noise emanating from a parking lot on the site where the South Broad Street Theatre formerly stood, the noise being occasioned by the parking and de-parking of cars, the obtaining of gasoline and oil by motorists and the talking which occurs in the transaction of these events. The record also discloses that some of these protestants have not protested the recent transfer of other licenses in the immediate neighborhood.

A personal examination by the court of the entire area indicates that this particular parking lot is loaded to capacity every night and that it serves, as all central city parking lots likewise do, many persons whose business, entertainment, or pleasure might well take them to any part of central Philadelphia and it is not limited particularly to those who might patronize the applicant's place of business, if the transfer be granted. It is clear also to the court that so far as the night parking facilities in that area are concerned, the saturation point has now been reached. While the board has not disposed of the objections on these con-

siderations but has simply sustained them, the court cannot conclude that the transfer of the license would, in any way, increase the noises, the present existence of which are the basis of the protests.

By way of pertinent comment on the protests it is noted that one of the witnesses, Miss Anna B. Ross, formerly lived in a private residence in a Zone A residential section of Philadelphia before moving to her present address, 1307 Spruce Street, where she has lived for seven years and another witness, Mrs. Zelda Rauch, formerly lived in an apartment in a strictly residential neighborhood in the northeast section of Philadelphia before removing to the same address where she has lived for 10 years. The present apartment of both these witnesses is close to the location to which the transfer is requested and almost in the very center of the area to which the Liquor Control Board has approved the transfer of many other licenses, including those of so-called night clubs, prior to the first application and subsequent to the last application of the appellant herein.

While it appears to us from the record of this case and our own examination of the area that there is a concentration of liquor licenses in this area, the Liquor Control Board, being more than a mere licensing authority, but an agency created for the exercise of a phase of the police power, apparently does not think so. In appeals of this nature, the court has only the limited picture of the individual case before it together with the opinion of the board and does not have the full picture of the entire county.

Therefore, the question whether or not there is undue concentration which might be subversive of good order in one section and which, on the other hand, because of the quota provisions of the act, might create public inconvenience in other sections, is not before us in this case because there is nothing in the record or in

the board's opinion on this point. On the second appeal before Judge Milner, one of the established facts before the court was that there was an excessive number of licenses in this area from which the court properly found in the face of the protest from the bureau of police that an additional license would be likely to create a problem of law enforcement. In the matter before us, there is no reference to indicate that the transfer now will create an excess of licenses, or that it would, if granted, of itself add to or create an additional problem of law enforcement.

The granting of at least 12 additional transfers within a radius of 1,000 feet since this application was first made and the withdrawal of the protest by the bureau of police to all transfers to this area are matters which emphasize the absence now of the considerations present when the previous applications were heard and denied.

We have made extended reference herein to the previous applications in order to distinguish them on their facts from the application before us. This the board omitted to do but rather included in its considerations on the third application facts which were not present before it but which were incorporated into its findings by reference to the previous hearings. Applicant, however, is entitled to a separate and distinct hearing on each application and the decision on each application must necessarily rest on the facts presented in each case. A decision on one application cannot be held to be res adjudicata of another. To hold otherwise would be to deprive an applicant of a right afforded him by the act of assembly and in situations where changing conditions occur or the policy of the board is altered or modified as it herein appears to be, a determination otherwise would work an unwarranted hardship on an applicant. (See Pittsburg Brewing

Company's License, 16 Pa. Superior Ct. 215, 217 (1901)).

Bearing in mind all these considerations, including the significant withdrawal of its protest by the bureau of police, it is manifest that a situation is presented for our determination essentially different from that existing when the former petitions were refused. Here the single question is the sufficiency of the few protests against the transfer actually presented to us and to the board. Viewed in this light, we think the board was not justified in refusing the application, especially after it had granted many other similar transfers to the same neighborhood in the face of its former refusals of this one, principally on the ground of the undue concentration of licenses therein. We think it probable that the board acted as it did in an effort to be consistent, a virtue that, when properly applied, is always commendable. Nevertheless, while consistency in action is altogether desirable when the basic facts that invoke it are also consistently similar, such an attitude can never be justified as an exercise of discretion, when the facts are as radically different as they are here. A blind adherence to a so-called consistency in such circumstances amounts to a technical abuse of discretion, for it is the equivalent of a failure to exercise any genuine discretion whatever upon the new and different set of facts. We feel certain that the board acted sincerely in refusing the transfer here asked for; but we are equally certain that it did so upon a mistaken understanding of its duty to decide the case upon the evidence actually before it.

Accordingly, the appeal is sustained, the decision of the Pennsylvania Liquor Control Board in refusing petitioners is overruled, and the application for the transfer as prayed for is granted in accordance with the order of this court entered November 13, 1946.